Eastern District of Kentucky
**FILED**

NOV 15 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### LONDON

CIVIL ACTION NO. 05-690-GWU

SUZANNA DANIELS,                                        PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

\* \* \* \* \* \* \* \*

The plaintiff appeals an administrative decision to terminate her Social

Security Income (SSI) benefits originally awarded in 2000. The case is currently

before the Court on cross-motions for summary judgment.

### STANDARDS APPLICABLE TO TERMINATION DECISIONS

*Once an individual is awarded benefits, his or her continued eligibility for such*

benefits is subject to the following review:

1.    Is the beneficiary engaging in substantial gainful activity? If so,
      then the disability will be found to have ended. See 20 C.F.R.
      Section 404.1594(f)(1), 416.994(f).

2.    Provided the beneficiary is not engaged in substantial gainful
      activity, does the beneficiary have an impairment or
      combination of impairments which meet or equal the severity of
      impairments in the Listing? If so, then the disability must be
      found to continue. See 20 C.F.R. Section 404.1594(f)(2),
      416.994(f).

1

Daniels

3.      If a Listing is not met, has there been medical improvement in
        the plaintiff's original conditions? That is, any decrease in the
        medical severity of the impairments present at the time of the
        most favorable medical decision that you were disabled or
        continued to be disabled.    20 C.F.R. 404.1594(b)(1)),
        416.994(b).

4.      Provided medical improvement has occurred, then the question
        is whether this has produced an increase in the residual
        functional capacity. If the improvement is not related to the
        ability to perform work activities, then one proceeds to step 5.
        If the improvement is related to work ability, then one proceeds
        to step 6. See 20 C.F.R. Section 404.1594(c), 416.994(c).

5.      Provided there has been no medical improvement or the
        improvement is not related to work ability, then one must decide
        whether an exception to the medical improvement standard will
        apply. If not, then a finding of continuing disability should be
        made. See 20 C.F.R. Section 404.1594(d) and (e), 416.994(d)
        and (e).

6.      If the medical improvement is found to be related to work ability
        or if an exception to the medical improvement standard applies,
        then one considers whether the current impairments in
        combination are "severe." If so, then one proceeds to step 7;
        if not, the beneficiary is no longer considered disabled. See 20
        C.F.R. Section 404.1594(f)(6), 416.994(f).

7.      If the impairments are found to be severe, then one must
        assess the beneficiary's ability to engage in substantial gainful
        activity in accordance with 20 C.F.R. Section 404.1561. If
        found capable of performing past relevant work, then the
        disability will be found to have ended. Otherwise, one proceeds
        to step 8. See 20 C.F.R. Section 404.1594(f) (7), 416.994(f).

8.      Provided the beneficiary cannot perform past relevant work,
        then one must assess the residual functional capacity and
        considering the age, education, and past work experience,
        determine whether other work can be performed. If so, then
        the beneficiary is no longer disabled. Otherwise, a finding of
        continuing disability should be made. See 20 C.F.R. Section

2

Daniels

404.1594(f)(8), 416.994(f).

The standard for judicial review is whether there is substantial evidence to support the Secretary's decision that the plaintiff's condition has improved to the extent that he can perform substantial gainful activity. Casiano, Jr. v. Heckler, 746 F. 2d 1144 (6th Cir. 1984). The Court must determine from the record upon what conditions the claimant was awarded benefits, and whether there has been any improvement in these conditions. Id. at 1148.

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Daniels, a 24 year-old woman with a high school equivalent education and no past relevant work history, currently suffered from impairments related to a history of idiopathic thrombocytopenia purpura (in remission after steroid treatment with recent exacerbation), degenerative joint disease, a history of tendonitis of the left shoulder, and a history of bursitis in the right shoulder. (Tr. 15, 19). The ALJ determined that medical improvement in the plaintiff's impairments had occurred since she was found to be disabled in a February 24, 2000 administrative decision and that this improvement was related to the ability to work. (Tr. 19). The claimant was found able to perform a restricted range of light level work since June 1, 2003 and this work was determined to constitute a significant number of jobs in the national economy. (Tr. 19-20). Therefore, she could no longer be considered totally disabled. (Tr. 20).

3

At the time of the comparison point decision, Daniels was found to suffer from idiopathic thrombocytopenia. (Tr. 33). This condition involves a decrease in the number of blood platelets due to unknown causes. Dorland's Illustrated Medical Dictionary, pp. 815, 1717 (27th Ed. 1988). The ALJ had noted that, on numerous occasions between May and October, 1999, her platelet count had satisfied that portion of Listing of Impairment Section 7.06 and that she had had credible complaints of joint pain. (Tr. 33). The plaintiff was noted to be unable to perform even sedentary level work and, so, she was determined to be totally disabled. (Tr. 33-34).

Dr. Mark Carter, an examining consultant, reported in late May of 2003 that Daniels had been treated for this condition with blood transfusions and steroids and that her condition had been stable since that time, with platelet counts generally within normal limits. (Tr. 259). Dr. Carter reported that the claimant's cardiovascular, pulmonary, peripheral, neurological, and musculoskeletal examinations had all been unremarkable. (Tr. 261).

In May of 2004, Dr. Truman Perry noted having treated Daniels for idiopathic thrombocytopenia since 1999. (Tr. 272). The condition was reported to have resolved in 2000 with steroid therapy and her platelet counts had remained within normal limits. (Tr. 272-273).

These opinions establish medical improvement to the condition for which she was originally awarded benefits.

4

Dr. Perry also reported a new condition--that the patient had injured her right shoulder in a December, 2002 automobile accident but that CT Scans of the shoulder had been essentially unremarkable with no sigh of soft tissue injury. (Tr. 273). Dr. Perry indicated that the plaintiff could perform a restricted range of light level work on a Medical Source Statement completed in July of 2004. (Tr. 360). This assessment clearly indicates that the plaintiff's ability to work had improved since the ALJ's findings in February of 2000.[1]

In February of 2005, Daniels, who was 15 weeks pregnant at the time, was hospitalized at Central Baptist Hospital with an exacerbation of her thrombocytopenia. (Tr. 396-437). She was noted to have had a normal blood platelet count as recently as one month prior to this event and was also reported to have not experienced other symptoms of the condition, such as bleeding and bruising, since her illness initially resolved in 2000. (Tr. 398). The patient was treated with blood transfusions and steroids. (Tr. 397). She was discharged home two days later, once her platelet count improved. (Tr. 397).

In April of 2005, Dr. Perry, noting the recent exacerbation, opined that Daniels would be disabled for at least a one-year time period. (Tr. 450). However, the following May, the physician reiterated that the specific physical restrictions he

---

[1]The Court notes that Dr. Sudideb Mukherjee reviewed the record, reviewed in the record in June of 2003 and opined that Daniels would have no exertional restrictions. (Tr. 350). A need to avoid exposure to moving machinery was the only restriction. This opinion also supports the ALJ's finding of medical improvement.

5

Daniels

imposed in July of 2004 remained in effect. (Tr. 451). Thus, the effect of the one exacerbation was short-lived.

The hypothetical question presented by the ALJ to Vocational Expert Julian Nadolsky included all of the physical restrictions identified by Dr. Perry. (Tr. 472-473). In response, Nadolsky testified that a significant number of jobs remained available to such a person. (Tr. 473). As previously noted, the ALJ could properly rely upon Dr. Perry's specific restrictions. Therefore, the hypothetical question fairly characterized Daniels' condition.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the ____/5____ day of November, 2006.

G. WIX UNTHANK
SENIOR JUDGE

6